```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
WORLD RELIGIOUS RELIEF, INC., D/B/A THE  :
WORD NETWORK,
                                         :
                    Plaintiff,
                                         :      05 Civ. 8257 (BSJ)
         v.                              :
                                                Order
                                         :
SIRIUS SATELLITE RADIO, INC.,
                                         :
                    Defendant.           :
------------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

### INTRODUCTION

Plaintiff World Religious Relief Inc., d/b/a The Word Network ("TWN"), filed a complaint alleging civil rights violations and contract claims against Defendant Sirius Satellite Radio, Inc. ("Sirius"). Sirius has moved to dismiss the complaint with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons below, Sirius's motion is GRANTED in part and DENIED in part.

### BACKGROUND

TWN is a nonprofit corporation that provides religiously oriented radio and television programming targeted at an African-American audience. (Compl. ¶ 6.) In 2002, TWN entered into a radio licensing agreement (the "Licensing Agreement") with Sirius that enabled Sirius to carry TWN on its satellite.



(Compl. ¶ 12.)  The Licensing Agreement covered an initial one-year term, and provided for automatic one-year renewals, unless either party notified the other of its intent not to renew at least 90 days prior to the end of the term.  (Compl. ¶ 13.)  The Licensing Agreement also provided that TWN would pay Sirius an annual marketing fee of $40,000.  (Compl. ¶ 14.)  In return, Sirius agreed to provide TWN with promotional materials and services including promotion of TWN on its other channels "in frequency and manner as Sirius determines in its sole discretion."  (Compl. ¶ 15; Licensing Agreement § 8.)

The Licensing Agreement was automatically renewed in 2003 and 2004.  (Compl. ¶ 16.)  In 2005, however, Sirius provided TWN timely notice of its intent to not renew the agreement.  (Compl. ¶ 18.)  In response to Sirius's notice, TWN alleges that it called Sirius to find out why it was being dropped and was told it was due to "poor ratings."  (Compl. ¶ 19.)  TWN also alleges that in a subsequent conversation, Sirius told TWN that it would have to pay many millions of dollars to stay on the satellite.  (Compl. ¶ 21.)

## DISCUSSION

### I. Legal Standard

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's

favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). A motion to dismiss may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Weisman v. LeLandais, 532 F.2d 308, 311 (2d Cir. 1976) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "The level of specificity necessary to state a claim for Rule 12(b)(6) purposes is governed by the Federal Rules of Civil Procedure's notice pleading principles that call for no more than 'a short and plain statement' of a plaintiff's claim." Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001); see Fed. R. Civ. P. 8(a).

## II. Civil Rights Claims

These liberal standards notwithstanding, a plaintiff claiming a civil rights violation "must specifically allege . . . circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994). "'[N]aked assertions' in a complaint that do[] not set forth supporting allegations of facts" are insufficient and cannot withstand dismissal. Odom v. Columbia Univ., 906 F. Supp. 188, 194-95 (S.D.N.Y. 2005); accord Yusuf, 35

F.3d at 713-14.[1]  Thus, in Odom, for example, the court dismissed a complaint brought by an African-American female plaintiff who alleged that the defendant University was motivated by racial bias in, among other things, refusing to process her loan application timely, canceling her registration, and banning her from campus.  Odom, 906 F. Supp. at 188.  Although the plaintiff's complaint alleged a disparity between her treatment and the treatment of similarly situated white students, the court nonetheless found that her allegations were conclusory.  Id. at 194.  Specifically, the court in Odom explained that "[the plaintiff] does not refer to a single situation in which a student, let alone a similarly situated student, was treated differently by [the defendant].  [The plaintiff] does not allege any facts that support a conclusion that [the defendant's] conduct was the result of purposeful race-based discrimination."  Id. (emphasis added).

Likewise, in Yusuf, the Second Circuit affirmed the district court's dismissal of a complaint in which the plaintiff alleged (1) that he was Bengali, while the members of the disciplinary committee were white, and (2) that a white student who had been punished for assaulting Yusuf received a lighter punishment than Yusuf received on the harassment charge.  See Yusuf 35 F.3d at

---

[1] These pleading standards apply equally to federal and state civil rights claims.  See Timothy v. Our Lady of Mercy Med. Ctr., 2004 U.S. Dist. LEXIS 3970, at *1 n.1 (S.D.N.Y. 2004).

709. The court found that these allegations do not provide "any specific factual support for his claim of a racial motivation," which rendered the complaint a "naked allegation" deserving dismissal. Yusuf 35 F.3d at 714 (emphasis added).

Here, TWN claims that Sirius's exercise of its contractual right not to renew the License Agreement was an act of purposeful racial discrimination in violation of 42 U.S.C. § 1981[2] and New York Executive Law § 296(13).[3] In support of its claims, TWN alleges that:

- No non-African American, non-religious programming providers carried by Sirius received similarly inadequate marketing services from Sirius;

---

[2] Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (emphasis added).

[3] New York Executive Law § 296(13) provides, in part:

> It shall be an unlawful discriminatory practice (i) for any person to discriminate against, boycott or blacklist, or to refuse to buy from, sell to or trade with, any person, because of the race, creed, color, national origin, sexual orientation, military status or sex of such person, or if such persons partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers or customers, or (ii) for any person willfully to do any act or refrain from doing any act which enables any such person to take such action.

N.Y. Exec. Law § 296(13) (Consol. 2007).



- no non-African American, non-religious programming providers carried by Sirius with similarly "poor ratings" had their contracts terminated;

- no non-African American, non-religious programming providers carried by Sirius were required to "catapult its required payments to Sirius from $40,000 to multi-millions of dollars in order to be carried on Sirius's satellite;"

- Sirius's reason of "poor ratings" for declining to renew the contract is a pretext for racial and religious discrimination;

- Sirius's refusal to renew the agreement, failure to adequately promote TWN, and request for millions of dollars to keep TWN on its network is part of a concerted effort to remove African-American and religious programming providers from Sirius's satellite network; and

- Sirius has infringed on TWN's right to make and enforce contracts.

(Compl. ¶¶ 22-27, 30.)

These conclusory allegations are insufficient to support an inference of racial discrimination. As was the case in Odom and Yusuf, TWN has not alleged any specific facts to support a finding of disparate treatment. TWN's conclusory allegations cannot survive this motion to dismiss. See Odom, 906 F. Supp. at 188; Yusuf, 35 F.3d at 709.

TWN's reliance on Gant v. Wallingford Board of Education, 69 F.3d 669 (2d Cir. 1995) is misplaced, as the allegations there were not "naked assertions" but rather allegations "upon which a court could find a violation of the Civil Rights Acts." Id. at



673. Gant is also distinguishable in that the district court dismissed the plaintiff's claims with prejudice, which is not the result here; the Court grants TWN leave to amend with respect to its civil rights claims.[4]

### III. Breach of Contract

To succeed on a breach of contract claim, a plaintiff must prove four elements: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages. See Clalit Health Servs. V. Israel Humanitarian Found., 385 F. Supp. 2d. 392, 397 (S.D.N.Y. 2005). Here, TWN alleges that Sirius "unlawfully breached the [Licensing] Agreement by failing to provide TWN with the marketing services it paid Sirius $40,000 annually to provide," and that TWN was damaged thereby. (Compl. ¶¶ 37, 38.) Drawing all inferences in favor of TWN, the Court finds that the complaint alleges that Sirius failed to provide any of the products or services listed under the "Promotion" section of the Licensing Agreement. (See Licensing Agreement § 8.)

Sirius's argument that it had complete discretion over the services to be provided under Section 8(b) of the Licensing Agreement falls short because TWN does not rely exclusively on this subsection (see Compl. ¶ 37), and remaining subsections of

---

[4] The Second Circuit has noted that the "usual practice upon granting a motion to dismiss [is] to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

the "Promotion" section of the Licensing Agreement do not confer Sirius with complete discretion. (see Licensing Agreement § 8.) Accordingly, Sirius's motion to dismiss with respect to this claim is denied.

### IV. Breach of the Covenant of Good Faith and Fair Dealing

Independent of its contract claim, TWN alleges a breach of the covenant of good faith and fair dealing. (Comp. ¶¶ 39-42.) While New York law recognizes good faith and fair dealing as an implied covenant in every contract, it is not a separate claim. See Village on Canon v. Bankers Trust Co., 920 F. Supp. 520, 534-35 (S.D.N.Y. 1996) ("There is no independent claim for the breach of the duty of good faith and fair dealing;" dismissing claim). Accordingly, Sirius's motion to dismiss this claim with prejudice is granted.

### CONCLUSION

For the reasons stated herein, Sirius's motion to dismiss the complaint with prejudice is GRANTED in part and DENIED in part. TWN shall have 30 days from the entry of this order to amend its complaint with respect to the civil rights claims.

**SO ORDERED:**

*/s/ Barbara S. Jones*
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         August 3, 2007